IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KEVIN J. BAURER, | ) | |
| | ) | |
| Plaintiff, | ) | CV-06-6291-HU |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

HUBEL, Magistrate Judge:

## **INTRODUCTION**

Plaintiff Kevin Baurer brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision should be affirmed and the case dismissed.

## BACKGROUND

Baurer was born April 8, 1974. Tr. 62.[1] He has a high school education. Tr. 241. Baurer worked as a dishwasher, order clerk, and telephone surveyor. Tr. 241, 260. Baurer alleges disability due to depression, anxiety, social phobia, panic disorder, and personality disorder. He applied for DIB and SSI on February 18, 2005, and his applications were denied. A hearing was held before an Administrative Law Judge (ALJ) on April 7, 2006. Baurer satisfies the insured status requirements for a claim under Title II through March 31, 1996, and must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). His application for benefits states onset of disability on December 30, 2000. However, some state agency forms list the alleged onset date as December 30, 1994. The ALJ found he alleged disability from December 30, 1994. The ALJ issued an opinion on July 28, 2006, finding Baurer not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*,

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. Baurer challenges the ALJ's determination of his RFC. At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ found Baurer had no relevant past work.

When the adjudication reaches step five, the Commissioner must determine whether the claimant can perform any work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. §§ 404.1520(g), 416.920(g). Here the burden of production shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Baurer challenges the ALJ's finding that he can perform other work in the national economy.

## THE ALJ's FINDINGS

The ALJ found the medical evidence established Baurer has severe impairments of personality disorder, depression, and anxiety. Tr. 16. She determined Baurer's impairments did not meet or equal the criteria for a listed impairment enumerated in 20 C.F.R. Part 404, subpart P, appendix 1 (Listing of Impairments). *Id.* In determining Baurer's RFC, the ALJ found he was able to perform work with no exertional limitations, but his mental impairments resulted in some

limitations.  The limitations are "work environments where he will have no close interaction with the general public and only limited direct contact with the general public.  He is also limited to performing simple work tasks, although he can perform detailed work tasks on an infrequent basis."  Tr.  18.

The ALJ elicited testimony from an impartial vocational expert (VE).  Tr.  258-265.  The ALJ asked the VE whether an individual of Baurer's age, education and experience was capable of making an adjustment to other work.  The VE replied Baurer could perform jobs that exist in the national economy including cleaner-commercial, institutional; sweeper-cleaner, industrial; and dishwasher-kitchen helper.  The ALJ determined the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT).  The ALJ found Baurer could perform work that exists in significant numbers in the country and was not disabled within the meaning of the Social Security Act.  Tr.  20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)(citations omitted).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility.  *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not

substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d at 1040.

## DISCUSSION

Baurer alleges the ALJ erred in determining his RFC by improperly rejecting the opinions of the examining psychologists. He further alleges the ALJ erred in evaluating his credibility. Baurer also argues the ALJ erred at step five because the Commissioner failed to meet his burden.

## I.    Medical Background

Dr. Moshofsky treated Baurer in September 2004, for joint pain, fatigue, leg numbness, and cellulitis of the trunk. Tr. 107-108. He noted the symptoms could be arthritis and ordered tests. Tr. 115-116. Dr. Moshofsky also noted Baurer experienced no depression in the past year. *Id.* He treated Baurer for an umbilicus infection that occurred when Baurer was camping with a friend. Tr. 115. Baurer's laboratory and diagnostic imaging tests between August 2004, and March 2005, were normal. Tr. 124-133. Baurer was also treated in September 2004, by Drs. Kaiser and Self for his umbilicus infection and given a prescription for Oxycodone. Tr.111-114.

Dr. Truhn conducted a psychological evaluation of Baurer on March 8, 2005, with testing, mental status interview and review of records. Tr. 140-147. He noted Baurer was prescribed Zoloft, but refused to take it due to potential side effects Tr. 145. Baurer's MMPI-II test produced an invalid profile either because of exaggeration, psychosis, or random answers. Tr. 145. Dr. Truhn diagnosed Dysthmic Disorder, late onset; Generalized Anxiety Disorder; Rule out Panic Disorder; Rule out Social Phobia; Rule out Gender Identity Disorder; Major Depressive Disorder, moderate, in remission by client report; Personality Disorder NOS with histrionic features; and a Global

Assessment of Functioning of 44.[2]   Tr. 145-146.  Dr. Truhn also completed a Rating of Mental Impairment Severity (MIS) form for the state agency.  He noted moderate difficulty in activities of daily living (ADL); marked difficulty in social functioning; and mild difficulties in concentration, persistence and pace; and no episodes of decompensation.  Tr. 148-149.  Dr. Truhn also noted Baurer was not compliant with treatment recommendations.  Tr. 149.

Dr. Kimberly, a state agency consultant, examined Baurer on April 23, 2005 and noted a history of tinnitus, neck and knee pain, and depression.  He found no objective basis for these complaints.  Dr. Kimberly determined Baurer could stand/walk for six hours out of eight due to general deconditioning, and had no exertional limits.  Tr 150-154.

Dr. Northway, a state agency consultant, examined Baurer on April 25, 2005.  Tr. 156-161. He noted Baurer reported his symptoms in dramatic way.  Dr. Northway questioned Baurer on his decision not to take anti-depressants and noted he "still could provide no solid reason for concern over the physical side-effects."  Tr. 159.  Dr. Northway noted Baurer had no problem with ADLs, but would have problems working collaboratively and cooperatively with others.  Tr. 160.  He noted further that anti-depressants or anti-anxiety medications would probably ameliorate some of his symptoms.  *Id.*  Dr. Northway diagnosed Anxiety Disorder NOS w/aspects of agoraphobia; Panic

---

[2]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning.  A GAF of 31 to 40 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.  (e.g., depressed man avoids friends, neglects family and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).  A GAF of 41 to 50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job).  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  The American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), 34 (4th ed. 2000).

Disorder; possible Post Traumatic Stress Disorder; Major Depressive Disorder, moderate, current; Rule out Somatization Disorder; Personality Disorder with features of borderline and histrionic personality present; and a GAF of 50.  Tr.  161.

On May 10, 2005, Dr. Henry, a state agency consultant, completed a Mental Residual Functioning Capacity (MRFC) form for Baurer.  Tr.  170-172.  He determined Baurer was moderately limited in the ability to carry out detailed instructions, to maintain concentration for extended periods, to interact with the general public, and the ability to set realistic goals.  Dr. Henry opined Baurer could carry out simple and detailed tasks, but his concentration problems would make frequent detailed tasks difficult.  He also noted Baurer should have only occasional contact with the general public, and that vocational rehabilitation training would be beneficial.  *Id.*  Dr. Henry also completed a Psychiatric Review Technique (PRT) form and noted the Affective Disorder of Depression, Anxiety Disorder with aspects of agoraphobia, and Personality Disorder with borderline/histrionic personality traits.  He noted moderate functional limitations in social functioning, and concentration, persistence, and pace.  Dr. Henry found no C criteria.  Dr. Henry further noted Baurer's impairments did not meet or equal a listing.  Tr.  176-187.

Dr. Newhall, a physician from White Bird Clinic, treated Baurer for depression and anxiety on May 13, 2005, and prescribed Klonopin, an anti-anxiety medication.  Tr.  168-169.  Tom Akin, a mental health nurse practitioner from White Bird Clinic, noted in September and October of 2005, that Baurer preferred counseling and was not interested in anti-depressants.  He diagnosed Anxiety NOS, mild; Rule out PTSD; and dependent personality traits.  Baurer was prescribed Hydrocodone for headaches and Klonopin for anxiety.  Tr.  197-206.  Toni Fudge, a counselor from White Bird Clinic, provided therapy to Baurer in 2005 and 2006.  She noted a diagnosis of Generalized Anxiety

Disorder and GAFs from 40-48. Tr. 208-222. Ms. Fudge's notes from May 2005 indicate Baurer was seeking "supportive counseling" while pursuing disability benefits and ending a relationship. Tr. 214. Her notes state Bauer was usually stable and, in July 2005, he reported "attending the Country Fair and overall positive about his connections with friends, playing for attendees, and discussions on various issues." Tr. 212. Dr Rethinger, a state agency consultant, confirmed the MRFC and PRT developed by Dr. Henry in July 2005. Tr. 190. Ms. Fudge's therapy notes from 2006 indicate Baurer had periods of increased anxiety following stressful interactions with a person he had a restraining order against, although he was also able to participate in and attend a musical event. Tr. 209.

## II.    RFC Determination

### A.  Psychologist Opinion

Baurer argues Dr. Truhn diagnosed Baurer with panic disorder, social phobia and gender identity order and the ALJ should have considered these diagnoses in developing Baurer's RFC. However, the medical record indicates Dr. Truhn did not make a diagnosis of these conditions. He stated "rule out" those conditions. The meaning of the term "rule out" is to eliminate or exclude something from consideration.[3] It was reasonable for the ALJ to disregard these "rule out" statements as only potential diagnoses. An ALJ's findings are upheld "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d at 1193 (citations omitted).

---

[3] Medical Definitions, MedicineNet.com, available at www.medterms.com/script/main/art.asp?articlekey+33, last viewed July 10, 2007. "It used to be common to list many possible diagnoses in descending order of likelihood by stating the intention to 'rule-out' this or that condition. . ." Hirschman, Ann G., Medical Proof of Social Security Disability, § 1.9 (2nd ed. 2000).

Even if these were true diagnoses, Baurer offers no additional functional limitations that would result from them.  The mere fact that a condition has been acknowledged with a medical diagnosis does not in itself equate to a finding of disability.  *See, Key v. Heckler,* 754 F.2d 1545, 1549-1050 (9th Cir. 1985); *Young v. Sullivan,* 911 F.2d 180, 183-184 (9th Cir. 1990).  The ALJ must determine whether a claimant's impairments cause functional limitations that interfere with his ability to work.  20 C.F.R.  §§ 404.1545, 416.945; SSR 96-8p.  The ALJ found Baurer had severe mental impairments and tailored the RFC accordingly.   The ALJ is not required to include limitations in an RFC he found neither credible nor supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211,1217 (9th Cir. 2005).

Baurer also asserts the ALJ should have accepted Dr. Truhn's determination that Baurer had "marked" rather than "moderate" limits in social functioning in developing his RFC.  Mental impairments are rated in severity according to functional limitations.  Functional limitations are rated from mild to extreme.  20 C.F.R. Pt. 404, subpt. P, app. l, 12.00(C).  Dr. Truhn checked the box on the MIS form indicating marked limits in social functioning with the explanation, "isolates self." Tr.  148.  The determination of the RFC, which is a vocational decision, is based on the entire record and rests with the ALJ.  20 C.F.R. §§ 404.1546, 416.946; SSR 96-5.  Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts.  *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001).  Dr. Truhn was an examining, not a treating, psychologist.

The ALJ can reject an examining physician's opinion that is uncontroverted by providing clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir 1995).  The ALJ can reject an examining physician's opinion that is "contradicted by another doctor" when the ALJ gives specific and legitimate reasons supported by substantial evidence in the record.  *Id* at 830-831, citing

9 - FINDINGS AND RECOMMENDATION

*Andrews v. Shalala,* 53 F.3d at 1043.  The ALJ is not required to accept any physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Even a treating physician's opinion is not binding on an ALJ with respect to "the ultimate determination of a disability."  *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ noted the opinion of Dr. Northway that Baurer related his symptoms in "an overly dramatic fashion."  Tr. 17.  She also noted the state agency consulting psychologists found the record supported moderate limits in social functioning and recommended specific limitations on public contact in the RFC.  Tr. 18.  In addition, the ALJ noted Baurer's treatment record at the White Bird Clinic indicated his depression and anxiety were clinically stable and his anxiety was treated with Klonopin.  *Id.*  She further noted Baurer's counselor indicated he was seeking "supportive counseling" while pursuing disability benefits and ending his relationship with his girlfriend.  Although Dr. Truhn indicated Baurer "isolated" himself, the ALJ noted he was able to drive himself to appointments, go shopping, and take care of his personal needs.  Tr. 19.  Dr. Truhn did not indicate Baurer was unable to work and he specifically noted anti-depressant medication would likely benefit Baurer.  Tr. 17.

The ALJ gave legally sufficient reasons for determining Baurer's social functioning limitations were moderate.  Even if these reasons were not sufficient, the ALJ developed an RFC that limited Baurer to work environments with no close interaction with the general public and only limited direct contact with the public.  Any potential error would be irrelevant to the disability conclusion and thus harmless.  *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Baurer also argues Dr. Northway's statement that Baurer would "have problems working cooperatively and collaboratively with others" was not included in his RFC or properly considered by the ALJ. Dr. Northway stated,

> In general, Mr. Baurer presented in a somewhat overly dramatic manner. Aspects of his presentation would strongly suggest a characterological or Axis II disorder. This appears to be overlaid on top of anxiety and depression. Because of the somewhat dramatic quality to his presentation, it was more difficult to determine his actual level of symptomology. By his report, he rarely leaves the house. He appears to have little interest in socializing with others. Nevertheless, he has had several girlfriends since his last significant relationship ended in January of 2002. The relationship that ended in 2002 had lasted approximately one and a half years. Mr. Baurer does have one friend that he sees on a regular basis. He notes she has a borderline personality disorder and that at times this makes it difficult for them to interact. Mr. Baurer probably would have problems working cooperatively or collaboratively with others because of a combination of Axis 1 and Axis II symptomology. In addition, his communications style would tend to discourage normal conversation and probably would be overly self-focused.

Tr. 160.

As noted below, the ALJ properly found Baurer not fully credible regarding his complaints. Dr. Northway stated it was difficult to determine Baurer's level of symptomology due to his dramatic presentation of symptoms. In fact, Dr. Northway pointed out inconsistencies in Baurer's self-report of symptoms. An ALJ may reject a physician's opinion premised on claimant's subjective complaints that are properly discounted by the ALJ. *Tonapetyan v. Halter*, 242 F.3d at 1149, citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Furthermore, as the Commissioner properly notes, the inclusion of this phrase in Baurer's RFC would make little or no difference as the jobs identified by the ALJ as appropriate for Baurer to perform require little contact with the public or interaction co-workers. *Dictionary of Occupational Titles*, §§318.687-010, 381.687-014, 389.683-010, WL-DICOT (4th ed. 1991). If there had been any error on the part of the ALJ, it would be harmless. *Stout v. Commissioner*, 454 F.3d at 1055.

11 - FINDINGS AND RECOMMENDATION

### B. Credibility Determination

Baurer asserts the ALJ failed to properly evaluate his testimony regarding his limitations. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Baurer has a medically determinable impairment which could produce some of his symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In assessing credibility, the ALJ may consider objective medical evidence and the claimant's treatment history. *Smolen v. Chater*, 80 F.3d at 1284-1285. The ALJ found Baurer's assertions of pain and disability inconsistent with his treatment record. The ALJ noted Baurer testified he had debilitating headaches, yet there was little medical evidence to support this. Dr. Kimberly found no objective findings to support the severity of Baurer's pain symptoms. Baurer received a prescription for pain medication from Dr. Newhall, but testified the narcotic medication did not relieve his pain. Tr. 19. The ALJ also noted there were no diagnoses or treatment recommendations regarding his allegations of hearing problems and back, neck, and knee pain. Tr. 16.

In addition to objective medical evidence and the claimant's treatment history, the ALJ may also consider compliance with treatment and the effectiveness of medications. *Smolen v. Chater*, 80 F.3d at 1284. The ALJ noted Baurer's refusal to consider anti-depressant medications because of potential side effects yet would take narcotic medications and take anti-anxiety medications. Dr. Truhn noted in his report that Baurer was not compliant with treatment and Dr. Northway opined anti-depressants would probably alleviate many of his symptoms. Tr. 17, 19, 149, l60.

12 - FINDINGS AND RECOMMENDATION

The ALJ may also employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Smolen v. Chater*, 80 F. 3d at 1284; *See also* SSR 96-7p. The ALJ noted Dr. Northway indicated Baurer presented his symptoms in an overly dramatic fashion. Tr. 17. She also noted Baurer's personality testing was invalid. The ALJ also found Baurer's testimony regarding his symptoms vague and unspecific. Tr. 18-19.

The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Smolen v. Chater,* 80 F.3d at 1285. The ALJ noted Baurer was able to live by himself and was able to perform self-care and activities of daily living. The ALJ also noted Baurer testified he did not like to leave his house yet was able to drive, go shopping, and attend appointments. The ability to perform daily household chores may indicate an ability to work. *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995); *See, Curry v. Sullivan,* 925 F.2d 1127, 1130 (9th Cir. 1990). On the other hand, a disability claimant does not need to be "utterly incapacitated to be eligible for benefits." *Fair v. Bowen,* 885 F.2d at 603. Nevertheless, if the claimant's level and type of activity is inconsistent with his claimed limitations, his activities do have a bearing on his credibility. *Id.* The ALJ gave clear and convincing reasons for rejecting Baurer's assertions regarding his inability to do any work. The ALJ's duty is to assess credibility and he did so based on substantial evidence in the record.

## III. Step Five Determination

Baurer argues the ALJ erred at step five by not including all of his limitations in the hypothetical question posed to the VE. The ALJ evaluated the evidence and reached an RFC assessment that reflected the limitations the evidence reasonably supported. The ALJ was not required to pose a hypothetical that contained limitations she did not find were supported by

13 - FINDINGS AND RECOMMENDATION

substantial evidence in the record. *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-1165 (9th Cir. 2001). She elicited testimony from the VE with a hypothetical question that included all of Baurer's limitations articulated in his RFC assessment. The VE testified that there were jobs in the national economy that Baurer could perform based on his RFC, age, education, and experience. Tr. 260-261. It was proper for the ALJ to rely on the VE's answer to a hypothetical that contained all of the limitations supported by substantial evidence. *Bayliss v. Barnhart,* 427 F. 3d at 1217-1218.

Baurer also asserts that the Commissioner has the burden of proving he is capable of working eight hours a day and performing the jobs identified by the VE. However, the burden of proving disability is always on the claimant. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). At step five, the burden of production shifts to the Commissioner to show there are jobs which exist in the national economy the claimant can perform given his age, experience and RFC. *Tackett v. Apfel,* 180 F.3d at 1100. The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Roberts v. Shalala,* 66 F.3d at 184. The ALJ asked the VE whether there were jobs Baurer could perform given his RFC, age, and experience. The VE testified there were. The ALJ's decision was based on substantial evidence in the record.

**CONCLUSION**

Based on the foregoing, the ALJ's decision that Baurer is not disabled under the Social Security Act is based on correct legal standards and supported by substantial evidence.

**SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due July 30, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due August 13, 2007, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this  13th  day of July, 2007.

   /s/ Dennis James Hubel
Dennis J. Hubel
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION